## I IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

TERRI GREIG, as Special Administrator of
the Succession of MICHAEL E. GREIG,
Deceased, and TERRI GREIG, Individually
as Representative Heir at Law of MICHAEL
E. GREIG, Deceased,

<em>Plaintiff</em>,

vs.

Case No. 08-1181-EFM-KGG

MAGED S. BOTROS, M.D.,


<em>Defendant.</em>

## MEMORANDUM AND ORDER

Plaintiff Terri Greig Huffman ("Plaintiff") brought this diversity action against Defendant

Maged S. Botros, M.D. ("Defendant") for medical malpractice in connection with the death of her

husband, Michael Greig in June of 2006.  The matter was tried to a jury over the course of eight days

from September 27, 2011 to October 5, 2011.  After deliberating, the jury returned a verdict in favor

of Defendant on October 7, 2011, finding that Plaintiff should take nothing and the action should

be dismissed on its merits.  Plaintiff now moves for a new trial.  Because the claimed errors did not

substantially and adversely affect the rights of Plaintiff, the Court denies Plaintiff's motion for new

trial.[1]

I.    **Plaintiff's motion for new trial is based on nine alleged errors during the course of the trial.**

Plaintiff states that the verdict is a "miscarriage of justice" in the following ways: (1) "the Court erred in submitting a causation instruction (Instruction #14) to the jury, and further erred in its response to the jury's question referencing the causation instruction;" (2) "the Court erred in giving the best judgment instruction;" (3) "that defense standard of care expert, James Mathews, M.D., did not offer opinions which were based on a reasonable degree of medical probability and the Court erred in allowing the defendant to recall the expert to cure this defect;" (4) "the Court erred in striking plaintiff's economist's testimony;" (5) "the Court erred in excluding key testimony under the hearsay rule;" (6) the Court erred in not allowing plaintiff to cross-examine both of [sic] defense standard of care experts with respect to Plaintiff's understanding that the defendant planned to discharge Michael Greig, rather than admitting him to the Clinical Decision Unit;" (7) "the Court erred in not allowing plaintiff to cross-examine defendant's standard of care expert, Dr. Ogle, on the issue of hoarseness and in restricting plaintiff's cross-examination of Dr. Ogle on the issue of the complaints the [sic] Michael Greig had at the onset of the chest pain;" (8) "the Court erred in ruling on plaintiff's motion in limine #4 regarding Terri Greig's remarriage;" and (9) "the cumulative effect of the Court's erroneous evidentiary ruling was prejudicial, warranting a new trial."[2]

---

[1] Doc. 195.

[2] Doc. 196.

-2-

**II.     A new trial is appropriate only where the claimed error substantially and adversely affects the rights of a party.**

Rule 59(a) of the Federal Rules of Civil Procedure permits the court to grant a new trial on motion "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal courts."   A motion for new trial pursuant to Fed. R. Civ. P. 59(a) is committed to the sound discretion of the trial court.[3] Such a motion is "not regarded with favor and should only be granted with great caution."[4]  "A new trial is appropriate only where the claimed error substantially, and adversely, affects the rights of a party."[5] The court should "ignore errors that do not affect the essential fairness of the trial."[6]

**III.    None of Plaintiff's claimed errors substantially and adversely affected Plaintiff's rights.**

*A.       The Court did not err in submitting a causation instruction to the jury, and did not err in its response to the jury's question referencing the causation instruction.*

Plaintiff argues that the Court erred in giving Instruction No. 14:

Proof by a preponderance of the evidence of causation is necessary to a finding of fault.  A defendant is "at fault" when he is negligent and that negligence causes or contributes to cause the event which brought about the injury for which the claim is made.  A person may be negligent but unless that negligence causes or contributes to cause the injury, that person cannot be "at fault."[7]

---

[3] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen'l Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[4] *United States v. Kelley*, 929 F.2d 582, 586 (10th Cir. 1991).

[5] *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)

[6] *McDonough Power Equip.*, 464 U.S. at 553.

[7] Doc. 185, p. 16.

Plaintiff objected to the inclusion of a causation instruction both in writing and in person during the instruction conference at trial.[8]   The Court, believing causation to be a critical element of a medical malpractice instruction, gave the instruction.  Defendant correctly notes that causation is a vital element of a medical malpractice action, which requires negligence (breach of a duty) and causation of a resulting injury.[9]   While it is true that the Pattern Instructions for Kansas ("PIK") recommends that a causation instruction not be given,[10] PIK is only advisory. Discretion regarding what jury instructions should be given is left with the court.[11]   Here, the Court exercised its discretion and chose to instruct the jury on a vital element of the claim.  The instruction correctly stated the governing law by addressing causation, which is the required connection between negligence and injury in a medical malpractice case under Kansas law.  The Court did not err in giving the instruction.

The jury asked the following question regarding the causation instruction:

We are in need of clarification on Instruction #14.  Does the wording indicate that the defendant would be "at fault" if his actions <u>caused</u> the death of Mr. Greig?  Is there a distinction that must be made between "cause" or "contributes to cause" death as opposed to actions "did not save," meaning, must we stick to the exact

---

[8] Doc. 152, p. 6; Doc. 193, p. 106.

[9] *Hare v. Wendler*, 949 P.2d 1411, 1145 (Kan. 1997).

[10] *See* PIK Civil 4th 104.01.

[11] *Allen v. Minnstar, Inc.*, 97 F.3d 1365, 1368 (10th Cir. 1996) ("With respect to a district court's jury instruction decisions, i.e., whether or not to give a particular instruction, we likewise review for abuse of discretion.  As for the instructions themselves, we conduct a de novo review to determine whether, as a whole, the instructions correctly stated the governing law and provided the jury with an ample understanding of the issues and applicable standards." (internal citations omitted)).

wording of the instruction?  i.e. Letter of the Law vs. Spirit of the law.[12]

The Court gave the following answer:

I cannot provide you with any more clarification on Instruction #14 than is provided there.  You should follow all of the Instructions as written.  You must follow my instructions on the law despite any opinion you may have about what the law should be.[13]

Plaintiff states that the Court erred in giving the above answer, arguing the Court essentially "informed the jury: you must follow the exact language of the instructions, in the context of your questions above, even though 'did not save,' is, in fact, encompassed within causation and would entitle plaintiff to a verdict assuming the other elements were met.  Even if it is your opinion that 'did not save' should be included within the causation umbrella (which it is), you must stick to the 'letter of the law' as I have provided."[14]

The Court's answer to the jury's question addressed its concern that the jury needed to be redirected to the written law, as opposed to employing its own interpretation of the "spirit of the law."[15]  The answer the Court gave is entirely consistent with Instruction No. 1 (an instruction to which Plaintiff never objected) that states, "You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you . . . you would violate your sworn duty if you

---

[12]  Doc. 187, p. 1.

[13]  *Id.*

[14] Doc. 196.  The Court finds it difficult to discern the jury's intent from its question, and finds that Plaintiff's arguments regarding the question's suggested meaning and the implications of the Court's answer lack merit.

[15] Doc. 194, pg. 13.

were to base your verdict upon any view of the law other than that given you in these instructions."[16]

Plaintiff's objection at the hearing was primarily to the words "as written;" however, Instruction No. 1 contained multiple references that the jury should follow the law as provided in the Instructions, as opposed to what they may think the law should be (e.g. "the spirit of the law").[17]  The Court finds that its answer did nothing more than direct the jury to follow the law.  Because the Court is charged with providing instructions that correctly state the governing law,[18] it was not error to direct the jury back to the governing law as written.  Plaintiff's motion for new trial on these grounds is denied.

B.      *The Court did not err in giving the best judgment instruction.*

Plaintiff claims that the Court erred in giving Instruction No. 13, which states:

> Where, under the usual practice of the profession of a physician, different courses of treatment are available which might reasonably be used, the physician has a right to use his or her best judgment in the selection of the choice of treatment.
> However, the selection must be consistent with the skill and care which other physicians practicing in the same field would use in similar circumstances.

Plaintiff first objected to the instruction in writing, and then again at the instruction conference.[19]  The Court noted the objection, but proceeded in giving the instruction because there

---

[16] The Court also noted at the hearing that it pulled inspiration for its answer to the jury question from Instruction No. 1, which states in its entirety:  "The time has now come for me to explain to you the law that will govern your jury deliberations.  You are duty bound to follow the law as I explain it to you in the instructions that I am about to give you.  You as jurors are the sole judges of the facts.  This means that you must take the law as I explain it to you and apply the law to the facts revealed by the evidence.  Do not single out any one instruction alone as stating the law.  Rather, consider my instructions in their entirety.  Also, do not concern yourselves with the wisdom of the law.  Despite any opinion you may have about what the law should be, you would violate your sworn duty if you were to base your verdict upon any view of the law other than that given to you in these instructions."  Doc. 185, pg. 2.

[17] *Id.*

[18] *Allen*, 97 F.3d at 1368.

[19] Doc. 152, pg. 4 (objecting only to the use of the phrase, "same or similar communities"); Doc. 193, pg. 86.

was evidence presented during trial that there were two different courses within the standard of care that Defendant could have taken.[20]

Plaintiff argues that the instruction was given in error because it could have confused the jury.[21]   Plaintiff cites *Foster v. Klaumann* for the proposition that such an instruction could "potentially mislead jurors into improperly considering the physician's subjective intent or belief."[22] The *Foster* court, however, qualified that suggestion as follows: "When jurors are confronted with complex factual issues that must be decided before reaching the ultimate determination of whether a physician breached the standard of care, the best judgment language in the instruction could **potentially** mislead jurors into improperly considering the physicians's subjective intent or belief."[23]

The present case is distinguishable from *Foster*.  There were no complex factual issues that had to be decided before reaching the ultimate determination of whether Defendant breached the standard of care.  Any remaining concerns regarding potential confusion were dispelled with the objective language included in the instruction: "the selection must be consistent with the skill and care which other physicians practicing in the same field would use under similar circumstances." This language clearly stated the governing law of negligence that a doctor will not be found negligent if he or she selected a course of treatment consistent with the standard of care.  Once again, the Court instructed the jury on the governing law – and therefore the instruction was not in

[20] Doc. 193, pg. 87.

[21] While Plaintiff gives great deference to the PIK recommendation in its first claimed error, it apparently gives PIK little deference here.  Instruction No. 13 was taken from PIK Civ.3d 123.11.

[22] 216 P.3d 671, 692 (Kan. Ct. App. 2009).

[23] *Id.* (emphasis added).

error.  Plaintiff's motion for new trial is denied on this ground.

C.      *The Court did not err in allowing Defendant to recall its standard of care expert, James Mathews, M.D.*

Plaintiff argues that it was error for the Court to allow Defendant to recall its standard of care expert, Dr. James Mathews, for clarification as to whether his opinions were offered to a degree of reasonable medical certainty.

The recalling of Dr. Mathews was a mere formality.  The case law is clear that an expert's testimony does not require "magic words," only that it be stated with certainty and probability.[24] Dr. Mathew's testimony was replete with words signaling certainty and probability, as well as a knowledge of the standard of care at the time.[25]

Plaintiff argues that the Defendant and Court's reliance upon cases such as *Nunez v. Wilson* is flawed because those cases address expert testimony on causation issues.  However, Plaintiff does not cite any authority, or even a alternative standard, against which the Court could measure the sufficiency of Dr. Mathew's testimony.  Even weighing his testimony against Plaintiff's contention that "something more than a personal expression is required," the Court finds that his testimony alone was sufficient. The Court allowed him to be recalled to formally state that he expressed the

---

[24] See, *e.g., Howard v. TMW Enter., Inc.,* 32 F.Supp.2d 1244, 1252 (D. Kan. 1998) ("Although 'no particular words of art are necessary to express the degree of proof required,' expert testimony must reflect 'reasonable medical probabilities.'" (internal citations omitted)); *see also, e.g., Nunez v. Wilson,* 211 Kan. 443 (deploring "semantic merry-go-round and expressing that words of probability, such as "likely" and "probably," are sufficient to express reasonable medical certainty or probability.)

[25] *See, e.g.* Doc. 193, p. 32 ("most likely cause"); Doc. 193, p. 37 ("usually"); Doc. 193, p. 42 ("That's standard order in someone that presents with chest pain."); Doc. 193, p. 43 ("usually"); Doc. 193, p. 44 ("the incidence of this problem in this young man . . . is almost infinitesmal"); Doc. 193, p. 49 ("I think it was mandated by the standard of care . . . ").

opinions to a degree of medical certainty simply to appease Plaintiff's objections.  Regardless, the recalling of Dr. Mathews does not constitute error that would have substantially and adversely affected Plaintiff's rights.  The motion for new trial on this ground is denied.

D.      *The Court did not err in striking Plaintiff's economist's testimony.*

Plaintiff argues that the Court's ruling that struck part of the Plaintiff's economist's testimony was in error.  The Court does not find that the testimony was stricken in error; more importantly, the Court finds that even if it were, the error would be of little consequence.  "If error is found in the admission of evidence, we will set aside a jury verdict only if the error prejudicially affects a substantial right of a party."[26]  "Evidence admitted in error can only be prejudicial 'if it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'"[27]  Damages were not awarded in this case because the jury found the Defendant was not at fault.  Therefore, any error in the exclusion of admission of evidence relating to the amount of damages was not prejudicial, and it did not substantially and adversely affect the Plaintiff's rights.  The motion is denied on this ground.

E.      *The Court did not err in excluding testimony under the hearsay rule.*

Plaintiff argues that it was error for the Court to preclude Plaintiff from "testifying as to her *understanding* from telephone conversations with individuals who were present with Mr. Greig in

---

[26] *Sanjuan v. IBP Inc.,* 160 F.3d 1291, 1296 (10th Cir. 1998) (citing *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1049 (10th Cir.1993)).

[27] *Id.*

the hospital that Mr. Greig had been offered the opportunity to go back to his hotel and return the following morning for a stress test, but chose to stay because he felt so badly."[28]  To put it another way, Plaintiff believes she should have been permitted to testify about statements relayed to her, over the phone, by Curt McDonald (Michael Greig's friend) about other statements Mr. McDonald allegedly heard exchanged in a conversation between Defendant and Michael Greig.

The rule against hearsay states, "Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."[29] "Hearsay" means a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement.[30]  "Statement" is defined as a "person's oral assertion, written assertion, or nonverbal conduct, if the person intended it as an assertion."[31]  A "declarant" is the person who made the statement.[32]

Plaintiff artfully tries to distinguish the offered statements as Plaintiff's "understanding of events," as opposed to hearsay; however, Plaintiff's "understanding" of the events was based on the statements relayed to her by Michael Greig's friend, Curt McDonald.  Plaintiff's attempt to camouflage the "statements" as "general knowledge held by the Plaintiff" is not persuasive to the

---

[28] Doc. 196, p. 14 (emphasis added).

[29] Federal Rules of Evidence Rule 802, 28 U.S.C.A.

[30] Federal Rules of Evidence Rule 801, 28 U.S.C.A.

[31] *Id.*

[32] *Id.*

Court.  Moreover, Plaintiff suggests that her testimony on this topic was excluded because she "had the disadvantage of obtaining information via telephone and not live at the hospital."  This is a gross mis-characterization of the reason the evidence was excluded.

The evidence was properly excluded because it is a classic example of hearsay – in fact, it is at least double hearsay.  The declarants in question are Mr. Greig and Defendant.  The statements were made during a conversation between them at the hospital – not while testifying at court or in trial.  The statements were offered to prove the truth of the matter asserted (that Mr. Greig was given the opportunity to go home).  The recounting of this alleged conversation by Mr. McDonald to Plaintiff is double hearsay.  Further, Plaintiff has not offered a foundation that Mr. McDonald was even there for the exchange – Plaintiff only attempted to offer Mr. McDonald's testimony regarding "whether or not he had reason to disagree with [P]laintiff's version of events."[33]  If Mr. McDonald was not even present for the conversations, as Defendant suggests, the statements relayed by Mr. Greig to Mr. McDonald and then by Mr. McDonald to Plaintiff constitute triple hearsay.  At any rate, the statements are hearsay, and were properly excluded.  Plaintiff's motion for new trial on this ground is denied.

F.      *The Court did not err in not allowing Plaintiff to cross-examine experts with respect to the previously-ruled hearsay statements regarding "Plaintiff's understanding that [D]efendant planned to discharge Michael Greig, rather than admitting him to the Clinical Decision Unit."*

---

[33] Doc. 196, p. 14.

Plaintiff argues that she should have been permitted to cross-examine Defendant's standard of care experts regarding her understanding that Defendant offered Michael Greig the option to go home but elected to stay in the hospital because he was feeling so poorly.  Plaintiff argues that even if her "understanding" itself would be hearsay if offered for the truth of the matter asserted, that it would be admissible in this context because it would be offered to impeach the experts' credibility and biases.  The Court understands Plaintiff's argument to be this: that Plaintiff should have been permitted to question the defense experts as to whether they considered the hearsay testimony in developing their opinions, and the subsequent appropriateness of the expert's decision to give more weight to Defendant's version of events.

Defendant argues that Plaintiff should not be permitted to circumvent the Federal Rules of Evidence by presenting otherwise inadmissible evidence through the cross-examination of an expert witness.  The Court agrees with Defendant on this point.

Further, the Court reiterates its position that Plaintiff was able to cross-examine the experts on that issue based on the medical records, as opposed to Plaintiff's "understanding."  As such, Plaintiff's rights were not substantially and adversely affected by the Court's ruling.  Plaintiff's motion for new trial on this ground is denied.

G.    *The Court did not err in not allowing Plaintiff to cross-examine defendant's standard of care expert, Dr. Ogle, on the issue of hoarseness and in restricting plaintiff's cross-examination of Dr. Ogle on the issue of the complaints Michael Greig had at the onset of the chest pain.*

Plaintiff argues that she should have been permitted to cross-examine Dr. Ogle (defense

-12-

standard of care expert) on the issue of whether Mr. Greig was hoarse.[34]  Plaintiff argues that hoarseness is a possible symptom of dissection, and that Plaintiff testified in her deposition that Mr. Greig's voice "was strained and he almost sounded hoarse."[35]  Defendant denied that Mr. Greig sounded hoarse.  Essentially, it seems Plaintiff argues that she should have been permitted to cross-examine Dr. Ogle as to whether his opinion would change if he knew that Plaintiff stated that Mr. Greig may have almost sounded hoarse.[36]

The Court is given broad discretion regarding the admission and exclusion of evidence.[37] Under Rules 401 through 403 of the Federal Rules of Evidence, the Court may limit testimony based on its intended purpose, relevancy, and probative value.  The Court finds that Plaintiff's statement, alone, that Mr. Greig "may have almost sounded hoarse" was properly excluded as a basis for cross-examination of a witness.  The statement, already a shaky one at best, was not relevant.  Plaintiff's rights were not substantially and adversely affected by the Court's exclusion of this evidence, and therefore the motion for new trial on this ground is denied.

**H.**     *The Court did not err in its ruling on Plaintiff's motion in limine #4 regarding Terri Greig's remarriage.*

The Court previously addressed this issue multiple times, including in the motion in limine conference, with respect to Plaintiff's motion to reconsider (Doc. 156), and with respect to Plaintiff's

---

[34] Plaintiff does not cite to the record to indicate where this testimony was restricted.

[35] Doc. 196, p. 17-18.

[36] Once again, the Court has difficulty in ascertaining the substance of Plaintiff's arguments.

[37] *United States v. Solomon*, 399 F.3d 1231, 1239 (10th Cir. 2005).

motion for an interlocutory appeal.  In its Order regarding the motion to reconsider, the Court stated

the following:

> The Court agrees with Judge Kelly's opinion in *Sisk* that states, "This Court has no
> quarrel with the rule that the remarriage of the widow is inadmissible for the
> mitigation of damages.  Clearly, the cause of action for wrongful death arises at the
> time of death, and damages are to be determinable at that time.  This is not to say,
> however, that the widow's true identity must – under all circumstances – be
> concealed from the jury.  In this regard, if and when the widow testifies, she will be
> accurately and truly identified." *Sisk v. Nat'l R.R. Passenger Corp.*, 647 F.Supp. 861,
> 866 (citations omitted).  The similar reasoning Defendant cited from *Wood v. Detroit
> Edison Co.* elaborates upon this view: "It would be offensive to the integrity of the
> judicial process if the plaintiff, after taking an oath to be truthful, were permitted to
> misrepresent her marital status to the jury.  Of course, the defendants may not inquire
> into the details of the remarriage nor may they offer evidence concerning it.
> However, the desirable exclusion of evidence relating to the remarriage may not be
> carried to the point of affirmatively misrepresenting the truth to the jury." 294
> N.W.2d 571 (Mich. 1980).[38]

Plaintiff has not submitted additional arguments that sway the Court from its position above.

Further, any error that could be argued did not substantially and adversely affect Plaintiff's rights

for two reasons.  First, the evidence of Plaintiff's remarriage was never explored beyond Plaintiff

being sworn in under her legal name – rendering nearly all of Plaintiff's arguments moot.  Second,

Plaintiff's use of her legal name could not have possibly resulted in the jury's finding for Defendant.

Plaintiff's concern regarding evidence of her remarriage is that it would improperly be used to

mitigate Plaintiff's damages.  Because the jury found for Defendant, there were no damages to

mitigate.  Plaintiff's motion for new trial is denied on this basis.

I.     *The cumulative effect of the Court's evidentiary rulings was not prejudicial.*

Plaintiff argues that the cumulative effect of the Court's erroneous rulings was prejudicial,

---

[38] Doc. 164, p. 6.

warranting a new trial.  Because the Court finds no erroneous rulings, it disagrees that its rulings were prejudicial.  Further, the Court finds that even if they were erroneous rulings, they would be harmless error and would not constitute prejudice warranting a new trial.

**IT IS ACCORDINGLY ORDERED** that Plaintiffs' motion for new trial (Doc. 195) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 5th day of March, 2012, in Wichita, Kansas.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-15-